## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANNELL CRAIG**                                                  **CIVIL ACTION**

**VERSUS**                                                              **NO.  08-3486**

**BURL CAIN, WARDEN**                                   **SECTION "J"(2)**


### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Rannell Craig, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]  On September 24, 1996, Craig was charged by bill of information

in Orleans Parish with distribution of heroin.[3]  The bill of information was later amended

to charge possession of heroin.[4]   The Louisiana Fourth Circuit Court of Appeal

summarized the facts of the case as follows:

> New Orleans Police Officer Raymond Veit testified that on June 26, 1996,
> based on a telephone tip called in to a federal anti-crime hotline, he and federal
> Alcohol, Tobacco and Firearms Agent Mike Hutton set up a surveillance in the
> 2800 block of First Street.  Officer Veit immediately observed defendant sitting
> on some steps at the corner.   One-half  hour later, a blue truck stopped.
> Defendant approached the driver's side and leaned into the truck.  He removed a
> white shopping bag and, furtively looking around, ran into 2815 First Street.
> Defendant emerged within five minutes, at which time five or six males
> approached him.  The men conversed, and then disbursed.  Officer Veit and Agent
> Hutton, along with other law enforcement personnel, stopped the men.  They
> detained defendant for investigation.  When asked for identification, defendant
> replied that it was inside of his residence at 2815 First Street.  Officers obtained
> a search warrant for the residence.   Two pieces of documentation with
> defendant's name and address on them were found on a bedroom dresser in the
> residence.  Officer Veit had information that defendant's mother might reside at
> the address, but she was not there.  Some currency, two rolls of aluminum foil and
> a bottle of Mannitol were found in a dresser drawer in the defendant's bedroom.
> Officer Veit testified that aluminum foil was a common packaging material for
> heroin, and that Mannitol was used to dilute illegal contraband.  A scale was
> found on the top of the dresser.  Deputy U.S. Marshal Jerry Stewart handed
> Officer Veit a small plastic bag containing four pieces of foil containing what
> Officer Veit believed to be heroin.

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 3 of 8, Bill of Information, 9/24/96.

[4]Id., handwritten amendment signed and undated.

ATF Special Agent Mike Hutton's testimony essentially tracked that of Officer Veit. Agent Hutton said the address of the residence defendant was seen entering was the same as the one given by the hotline tipster. After Officer Veit returned with the search warrant, defendant let the officers into the residence with a key. Defendant pointed out his bedroom. Agent Hutton recovered two hundred dollars secreted in the toe of a boot found in that bedroom. Agent Hutton stated that Officer Veit showed him a bag containing several foils of what was believed to be heroin. Agent Hutton replied in the affirmative when asked by defense counsel whether defendant had been under restraints when the search warrant was executed. Defense counsel inquired why defendant had been restrained, and Agent Hutton replied that defendant had an outstanding warrant from Jefferson Parish.

Deputy U.S. Marshal Jerry Stewart testified that he secured defendant in the living room during the search. Defendant's hands were handcuffed in front of him. Defendant acted nervous and fidgety, and was pushing down on the cuffs of his shorts, unrolling them. Deputy Stewart asked defendant to stand up, and when defendant did so, a plastic bag containing four pieces of foil fell out of the left cuff to the floor.

Timothy Suzineaux, an investigator with the Orleans Parish District Attorney's Office and a former New Orleans police officer, was qualified by stipulation as an expert in the field of fingerprint examination. Mr. Suzineaux obtained a latent fingerprint from one of the four foil packets found in the plastic bag that fell from the cuff of defendant's shorts. He photographed the print and placed it on the police property and evidence books, to be examined for identification purposes.

New Orleans Police Department Criminalist John F. Palm Jr. was qualified by stipulation as expert in the analyses of controlled dangerous substances. He performed tests on the contents of the packets seized by Deputy Stewart, and said they all contained heroin.

Defendant testified that on the day in question he was sitting on his mother's porch waiting for the mail. He said he received his mail at that address. Some police officers stopped and called him over to their car. The police also called over some individuals who had been standing on the corner. The police checked his name and informed him that he had a warrant for his arrest from Jefferson Parish. Officers handcuffed him and asked him where he lived. He told them he was waiting for the mail carrier to deliver to his mother's residence. He said the officers wanted to go into his mother's residence. Defendant said he did not live there, and he could not authorize them to enter his mother's residence. Police obtained a search warrant. Defendant admitted to sitting on the sofa in the residence, but denied attempting to remove anything from the cuffs of his shorts.

He denied possessing heroin on that day.  Defendant admitted prior convictions for marijuana and cocaine, as well as a couple of misdemeanors.

Defendant testified on cross-examination that before the officers took him inside they performed a strip search on him in the alley.  He said Officer Veit and another one performed the strip search.  Defendant said he did not keep anything at his mother's residence.

State v. Craig, 859 So.2d 319 (La. App. 4th Cir. 2003) (Table); State Record Volume 5 of 8, Louisiana Fourth Circuit Court of Appeal Opinion, 2001-KA-2085, pp. 3-5, November 19, 2003.

Craig was tried before a jury on March 31, 1998, and was found guilty of possession of heroin.[5]  The State filed a multiple bill that same day.[6]  On motion of Craig's counsel, the state trial court held a post-conviction competency hearing on June 4, 1998, at which Craig was found competent.[7]  The state trial court sentenced Craig on July 9, 1998, as a third offender to serve life imprisonment.[8]

Craig's conviction became final five days later, July 16, 1998, because he did not file a written notice of appeal or seek further reconsideration of his sentence.[9]  See

---

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 3/31/98; St. Rec. Vol. 2 of 8, Jury Verdict, 3/31/98; St. Rec. Vol. 5 of 5, Trial Transcript, 3/31/98.

[6]St. Rec. Vol. 1 of 8, Trial Minutes, p. 3, 3/31/98; St. Rec. Vol. 3 of 8, Multiple Bill, 3/31/98.

[7]St. Rec. Vol. 1 of 8, Minute Entry, 4/17/98; Lunacy Hearing Minutes, 6/4/98.

[8]St. Rec. Vol. 1 of 8, Sentencing Minutes, 7/9/98; St. Rec. Vol. 5 of 8, Sentencing Transcript, 7/9/98.

[9]Failure to move timely for appeal under La. Code Crim. P. art. 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985).  At the time, La. Code Crim. P. art. 914 required that a criminal defendant

Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period less than seven days).

On September 14, 1998, Craig submitted a motion to the state trial court seeking leave to appeal his conviction and sentence.[10]  After he filed a writ of mandamus in the Louisiana Fourth Circuit Court of Appeal, the state trial court appointed counsel on March 31, 1999, to pursue an out-of-time appeal for Craig.[11]

On appeal, Craig raised four grounds for relief:[12] (1) The state trial court erred in denying the motion to suppress because the search warrant was fatally defective and the search of the residence was illegal. (2) The state trial court erred in adjudicating Craig

---

move for leave to appeal within five days of the order or judgment that was being appealed or of a ruling on a timely motion to reconsider a sentence. Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[10]St. Rec. Vol. 3 of 8, Motion for Leave to Appeal Judgment of Conviction, signed 9/14/98. Where there is no file stamped date, I will throughout this report rely upon and presume that the signature date of petitioner's state court pleadings is the earliest date upon which he could have submitted his pleadings to prison officials for mailing to the state courts.

[11]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 98-K-2687, 11/6/98; 4th Cir. Order, 98-K-2687, 12/11/98; St. Rec. Vol. 5 of 8, Minute Entry, 3/31/99; see also, St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 99-K-0680, 3/18/99; 4th Cir. Order, 99-K-0680, 5/7/99.

[12]State v. Craig, 825 So.2d 604 (La. App. 4th Cir. 2002) (Table); St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, 6/12/02.

a third offender based on the evidence presented. (3) The sentence was excessive. (4) The delay in obtaining an appeal effectively denied Craig the right to appeal.

The Louisiana Fourth Circuit reversed the conviction and vacated the sentence on June 12, 2002.[13]   On an errors patent review, the court concluded that the bill of information was fatally defective because it contained the charge of distribution rather than possession of heroin.  The court also resolved that Craig's other claims raised were without merit.[14]

The State filed a writ application with the Louisiana Supreme Court seeking review of the appellate court's ruling.[15]  The court granted the application and remanded the matter to the appellate court with instructions to obtain additional transcripts and other pleadings and to reconsider its decision.[16]

While the remand was pending, on October 17, 2003, Craig submitted an application for writ of habeas corpus to the state trial court addressing the timeliness of

---

[13]Id.

[14]The court noted that defense counsel may have filed a motion to reconsider the sentence which had not been resolved by the trial court.  The court nevertheless resolved that the sentence was neither excessive nor unconstitutional.

[15]St. Rec. Vol. 7 of 8, La. S. Ct. Writ Application, 02-K-1894, 7/10/02.

[16]State v. Craig, 833 So.2d 944 (La. 2003); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2002-K-1894, 1/10/03.

the handling of his appeal by the clerk of court.[17]  The state trial court eventually held a hearing on January 8, 2004, and determined that Craig was not entitled to post-conviction relief.[18]

In the meantime, the Louisiana Fourth Circuit on remand held that the record and transcripts reflected that Craig was tried on the proper charge of possession of heroin and that the jury was instructed and deliberated on the correct charge.[19]  Based on this finding and its prior opinion, the court re-affirmed the conviction and sentence.[20]  Craig's subsequent and timely[21] writ application to the Louisiana Supreme Court was denied without reasons on May 21, 2004.[22]  The Louisiana Supreme Court also denied Craig's application for rehearing on September 24, 2004.[23]

---

[17]St. Rec. Vol. 5 of 8, Petition for Writ of Habeas Corpus, signed 10/17/03.

[18]St. Rec. Vol. 1 of 8, Post-Conviction Hearing Minutes, 1/8/04.

[19]St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, pp. 3-5, 11/19/03.

[20]State v. Craig, 859 So. 2d at 319; St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, pp. 3-5, 11/19/03.

[21]Petitioner had 30 days from issuance of the appellate court's order to mail or file a writ application in the Louisiana Supreme Court.  La. S. Ct. Rule X§5; La. Code Crim. P. art.922.

[22]State v. Craig, 874 So.2d 173 (La. 2004); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2004-KO-0142, 5/21/04; La. S. Ct. Writ Application, 04-KO-142, 1/14/04 (postmarked 12/19/03).

[23]St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2004-KO-0142, 9/24/04; Application for Rehearing, 04-KO-0142, 6/18/04 (postal metered 6/3/04).

In the meantime, Craig submitted an application for writ of habeas corpus in the 20th Judicial District Court for the Parish of West Feliciana seeking collateral review of the timeliness of his appeal process in Orleans Parish. On or about March 1, 2004, the judge in that court transferred the writ application to the Orleans Parish Criminal District Court.[24] The trial court denied relief on June 21, 2004, in light of the pending appeal and because it had denied post-conviction relief.[25]

Craig filed an application for writ of certiorari with the United States Supreme Court on November 24, 2004, seeking review of his conviction.[26] The application was denied on February 22, 2005.[27]

Prior to that, on December 12, 2004, Craig submitted a motion to the trial court seeking to vacate or correct his sentence.[28] The state trial court denied the motion on March 21, 2005.[29] The Louisiana Fourth Circuit found no error in this ruling.[30] On

---

[24]St. Rec. Vol. 6 of 8, Trial Court Order (West Feliciana), 3/1/04.

[25]St. Rec. Vol. 1 of 8, Trial Court Judgment, 6/21/04.

[26]See U.S. Sup. Ct. Docket No. 04-7561 (Westlaw 2008); St. Rec. Vol. 3 of 8, U.S. Sup. Ct. Writ Application, signed 11/22/04.

[27]Craig v. Louisiana, 543 U.S. 1159 (2005).

[28]St. Rec. Vol. 3 of 4, Motion to Vacate, signed 12/12/04.

[29]St. Rec. Vol. 1 of 8, Trial Court Judgment, 3/21/05.

[30]St. Rec. Vol. 6 of 8, 4th Cir. Order, 2005-K-0606, 5/16/05; 4th Cir. Writ Application, 2005-K-0606, 4/19/05.

March 24, 2006, the Louisiana Supreme Court denied Craig's subsequent and timely writ application as repetitive pursuant to La. Code Crim. P. art. 930.4(A).[31]

While that writ application was pending, Craig submitted an application for post-conviction relief to the state trial court on June 30, 2005, raising three grounds for relief:[32] (1) The trial court failed to exclude inappropriate opinion evidence at trial. (2) Counsel gave ineffective assistance in that he failed properly to question the expert at trial. (3) Counsel gave ineffective assistance in that he failed to object to Craig being charged by bill of information rather than by indictment.  Almost two years later, on April 11, 2007, the state trial court determined that Craig had twice previously sought post-conviction relief and denied this application as repetitive, pursuant to La. Code Crim. P. art. 930.4.

Craig submitted a writ application to the Louisiana Fourth Circuit seeking review of only two of his claims: (1) the trial court failed to exclude expert testimony; and (2) ineffective assistance of counsel for failure properly to question the expert.[33]  In spite of the trial court's procedural denial, the Louisiana Fourth Circuit reviewed Craig's claims

---

[31]Article 930.4(A) prevents further review of a claim previously raised on appeal and is now repetitive.  St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2005-KH-1857, 3/24/06; La. S. Ct. Writ Application, 05-KH-1857, 7/15/05 (postmarked 6/2/05, signed 6/1/05).

[32]St. Rec. Vol. 6 of 8, Application for Post-Conviction Relief, signed 6/30/05.

[33]St. Rec. Vol. 6 of 8, 4th Cir. Writ Application, 2007-K-0632, 5/21/07.

and determined them to be without merit.[34]  The Louisiana Supreme Court denied Craig's

subsequent and timely writ application without reasons on April 25, 2008.[35]

## II.    FEDERAL HABEAS PETITION

On June 12, 2008, Craig filed a petition for federal habeas corpus relief in this

court raising four grounds for relief:[36] (1) The state trial court erred when it failed to

exclude opinion testimony at trial. (2) Counsel gave ineffective assistance where he

failed properly to question the expert at trial. (3) The search warrant was fatally

defective. (4) The prosecutor failed to amend the bill of information.

The State filed an opposition in response to Craig's petition arguing that the

petition was untimely filed.[37]  Craig filed a reply to the State's opposition requesting that

the court consider the fact that his claims have merit as an exception to the statute of

limitations.[38]

---

[34]St. Rec. Vol. 6 of 8, 4th Cir. Order, 2007-K-0632, 5/25/07; 4th Cir. Writ Application, 2007-K-0632, 5/21/07.

[35]State ex rel. Craig v. State, 978 So. 2d 359 (La. 2008) (Table); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2007-KH-1414, 4/25/08; La. S. Ct. Writ Application, 07-KH-1414, 7/11/07 (postmarked 6/14/07).

[36]Rec. Doc. No. 3.

[37]Rec. Doc. No. 11.

[38]Rec. Doc. No. 12.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[39] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Craig's petition, which, for reasons discussed below, is deemed filed in this

federal court on May 5, 2008.[40]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[39]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[40]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Craig's petition was filed by the clerk of court on June 12, 2008, when the filing fee was paid.  Craig signed the petition on May 5, 2008.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

I have reviewed the entire record and determined that the State's limitations

defense is incorrect and must be rejected.  First, the State erroneously calculated the date

of finality of Craig's conviction.  The State argues that the conviction became final 30

days after Craig's sentencing.  However, as noted above, at the time of Craig's

conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave

to appeal within five days of the order or judgment that was being appealed or of a ruling

on a timely motion to reconsider a sentence. While it is true that Article 914 was later

amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of

appeal, that amendment was not effective until August 15, 2003.  See Const. Art. 3, § 19

Section 19.  Because this statutory amendment became effective well after Craig's trial

and sentencing, it is inapplicable to this case.  The State's suggestion that Craig had 30

days to file his notice of appeal in 1998 is legally incorrect.

Next, the State errs in its suggestion, for which it cites no precedent, that Craig's

state applications for post-conviction relief were improperly filed, and therefore provided

no tolling, because they were deemed repetitive under La. Code Crim. P. art. 930.4 by

the state courts.  This assertion is inconsistent with the United States Supreme Court's

long-standing premise that "the question whether an application has been 'properly filed'

is quite separate from the question whether the claims <u>contained in the application</u> are meritorious and free of procedural bar." (emphasis in original) <u>Artuz v. Bennett</u>, 531 U.S. 4, 9 (2000).  The Supreme Court has made clear that the application of a state procedural rule to bar relief on a claim does not render the application itself improperly filed for federal tolling purposes.  <u>Id</u>., at 9-11; <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 417(2005).

Thus, the fact that the state courts denied relief on Craig's applications for post-conviction relief pursuant to La. Code Crim. P. art. 930.4 does not affect the timeliness calculation.  Furthermore, the State is incorrect in its suggestion that Craig's 2005 application for post-conviction relief and subsequent writs were all denied pursuant to La. Code Crim. P. art. 930.4.  As summarized above, the Louisiana Fourth Circuit denied Craig's related 2007 writ application finding no merit to his claims.  The Louisiana's subsequent denial in 2008 was without reasons.  Thus, the last reasoned decision on Craig's post-conviction claims raised in the 2005 application denied relief on the merits, not on procedural grounds.  <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

Applying the foregoing principles to the dates appearing in this record, I conclude that Craig's federal petition is timely filed.  Craig allowed only 272 days to lapse without a properly filed state application for post-conviction or other collateral review pending. The State's limitations defense is rejected.

13

I do find, however, that Craig's fourth claim raised in this federal petition has not been exhausted through the state courts, at least as presented in the instant federal petition.  Exhaustion was not addressed by the State in its opposition.  Craig did not allege in his state court pleadings that the prosecutor erred or failed to amend the bill of information.  The issue of the sufficiency of the bill of information was raised sua sponte on appeal by the Louisiana Fourth Circuit.  However, in his application for rehearing to the Louisiana Supreme Court filed after his direct appeal writ was denied, Craig recited the appellate court's first holding in which it concluded that the bill of information was defective because it charged <u>distribution</u> of heroin, a crime different from that charged at arrest and different from the verdict of the jury.  That opinion was, however, later superseded by the court's remand-decision affirming Craig's conviction, after it obtained additional transcripts and record documents verifying the charge of <u>possession</u> of heroin.  I find, however, that Craig's failure to exhaust state court remedies with respect to his fourth claim does not prevent this court from dismissing the claim on the merits, since relief is not warranted.  28 U.S.C. § 2254(b)(2).

IV.   <u>STANDARDS OF MERITS REVIEW</u>

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

14

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    EXCLUSION OF OPINION TESTIMONY

Craig's first claim is that the trial court erroneously permitted criminalist John

Palm to testify as an expert in the analysis of controlled dangerous substances without

challenging his testing methods pursuant to Daubert v. Merrell Dow Pharmaceuticals,

Inc., 509 U.S. 579 (1993).  Craig makes clear that he is not challenging Palm's

qualifications as an expert, but instead questions why the state trial court did not pre-screen or investigate the testing methods Palm used in reaching his opinion.

Craig first raised this claim in his 2005 application for post-conviction relief. The last reasoned decision on the issue was that of the Louisiana Fourth Circuit, which denied relief on the merits without specific reasons. See Ylst, 501 U.S. at 802.

In the instant claim, Craig argues that the state trial court failed to consider the "testability" of Palm's methods in testing the evidence for heroin. He complains that Palm's report was not read to the jury or placed into the record. He argues that the jury was not told how Palm conducted his tests or how he concluded that the evidence contained heroin. Craig questions the reliability of and the testing methods themselves used by Palm to conclude that the product tested was heroin. He contends that, because Palm's testimony was not assessed under the standards of Daubert and the state and federal rules of evidence, he did not receive a fair trial.

"'It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.' A petitioner is not entitled to federal habeas relief due to trial error unless 'the error had substantial and injurious effect or influence in determining the jury's verdict.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (further internal quotations omitted)); accord Jackson v.

Johnson, 194 F.3d 641, 656 (5th Cir. 1999).  "A state court's evidentiary rulings present cognizable habeas corpus claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."  Johnson v. Puckett, 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted); Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

In Daubert, the Supreme Court replaced the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony.  The question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry.  Butler v. Kitchens Brothers Mfg., 253 Fed. Appx. 395, 397-98 (5th Cir. 2007) (citing Burleson v. Tex. Dept. of Crim. Justice, 393 F.3d 577, 584 (5th Cir. 2004)).  A district court enjoys wide latitude in determining the admissibility of expert testimony, and that decision is not to be disturbed absent a showing of manifest error.  Id., at 398 (quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997)).

The court's gatekeeping duties, however, are a "preliminary assessment."  Daubert, 509 U.S. at 592.  Once that testimony is admitted, it is for the jury to resolve the credibility and the reliability of the expert's testimony.  "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

18

(emphasis in original) Primrose Operating Co. v. Natl. American Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United State v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Louisiana Supreme Court has adopted the Daubert analysis, State v. Foret, 628 So.2d 1116, 1121, 1123 (La. 1993), in instances where the methodology used by the expert is being questioned.  Dinett v. Lakeside Hospital, 811 So.2d 116, 119 (La. App. 4th Cir. 2002).  However, the Daubert opinion does not set forth "a constitutional floor" for the admissibility of scientific evidence.  Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994); Castillo v. Johnson, 141 F.3d 218, 221 (5th Cir. 1998) (recognizing that Daubert did not address admissibility of polygraph evidence in the context of federal constitutional law).  Daubert, therefore, does not serve as a basis for the granting of habeas relief.  See Keller v. Larkins, 251 F.3d 408, 419 (3rd Cir. 2001).

Instead, the standard on habeas corpus review is not whether the testimony satisfied Daubert, but whether the wrongful admission of evidence rendered the trial fundamentally unfair under due process standards.  Milone, 22 F.3d at 702; Wilson v. Sirmons, 536 F.3d 1064, 1101 (10th Cir. 2008); Williamson v. Ward, 110 F.3d 1508, 1522-23 (10th Cir. 1997).  The question of whether a petitioner's due process rights were violated is a question of law.  Richardson v. Quarterman, 537 F.3d 466, 472 (5th Cir. 2008).  Under the applicable AEDPA standard of review, this court therefore must

19

determine if the state court's decision is contrary to, or involved an unreasonable application of, Supreme Court precedent.

Under Supreme Court precedent, to be entitled to habeas relief on a claim of erroneous admission of evidence, the petitioner must demonstrate that the error had a substantial and injurious effect on the jury's verdict in violation of due process.  See Fry v. Pliler, __ U.S. __, 127 S. Ct. 2321, 2328 (2007) (citing Brecht, 507 U.S. at 619); Little, 162 F.3d at 862.  A due process violation exists when the wrongfully admitted testimony "played a crucial, critical, and highly significant role in the trial" in a manner that unfairly impacted the jury's verdict.  Little, 162 F.3d at 862.

Assuming (despite the clear lack of any such argument in his petition) that Craig intended to state a due process claim in this assignment of error, he has presented no evidence to rebut the state appellate court's conclusion that his claim was without merit, i.e., that the admission of Palm's expert testimony was not an abuse of discretion, or to demonstrate that Palm's testimony rendered his trial fundamentally unfair.

A review of the record and Craig's testimony at trial reflects that the focus of the defense was to convince the jury that Craig did not take anything, i.e., foil packets, out of the cuffs of his shorts and that he was not in possession of heroin on the day of his

arrest.[41]  The defense sought to persuade the jury that Craig did not possess drugs and did not live in the house where the drugs were found.  Palm's testimony, on the other hand, served the purpose of establishing for the record that the substance in the foil packets was heroin.  While proof that the substance was heroin was an element of the crime charged, Palm's expert testimony did not play a role in whether the jury believed that Craig possessed the packets, which was the critical and crucial question to be reached by the jury.

Furthermore, Craig has presented no basis to question the reliability of the tests performed by Palm under Daubert.  The record demonstrates that Palm stated his findings on the record that everything he tested from the evidence bag was positive for heroin.[42]  On cross-examination, Craig's counsel asked Palm what analyses he performed in reaching his conclusions.[43]  Palm indicated that he performed color tests, micro crystallin tests, gas chromatographic examination and mass spectral examination of the powder contained in the four envelopes presented to him.[44]  The testing methods used have been

---

[41]St. Rec. Vol. 5 of 8, Trial Transcript, p. 65-66, 3/31/98 (Craig's testimony).

[42]St. Rec. Vol. 5 of 8, Trial Transcript, pp. 51-52, 3/31/98.

[43]Id., at p. 52.

[44]Id., at pp. 52-53.

accepted and relied upon in other courts.[45]  Contrary to Craig's suggestion, the lab report was entered into evidence as State's Exhibit 10 and published to the jury for its review.[46]

Given Palm's testimony concerning his extensive qualifications and experience,[47] it cannot be said that the state court's admission of his expert testimony rendered the trial fundamentally unfair.  Thus, the state court's denial of relief was not contrary to, or an unreasonable application of, the law.  He is not entitled to habeas relief on this claim.

## VI.   INEFFECTIVE ASSISTANCE OF COUNSEL

Craig alleges that his counsel gave ineffective assistance when he failed to question criminalist Palm more thoroughly about the validity of his tests on the evidence found to be heroin.  He argues that counsel failed adequately to question Palm to demonstrate the reliability and basis for his testing and expert conclusions under Daubert.  Specifically, Craig contends that counsel should have questioned Palm to lay a foundation including the labeling and chain of custody of the specimens tested.  He also argues that counsel's cross-examination of Palm was prejudicial because he failed to

---

[45]See, e.g., U.S. v. Ammar, 714 F.2d 238 (1983) (gas chromatographic analysis, color tests, spectrum examination); Powell v. Dept. of Corr., 2006 WL 1214997 (N.J. Super. A.D. May 8, 2006) (color tests, gas chromatography, mass spectrometry test); Lopez v. State, 2005 WL 1405734 (Tex. App. June 16, 2005) (gas chromatography, mass spectrometry test); State v. Harris, 530 P.2d 646 (Wash. App. 1st Div. 1975) (color tests, micro-crystalline test).

[46]Id., at pp. 53, 55.

[47]Id., at pp. 49-50.

obtain an explanation for the jury of the technical terms used in identifying the tests Palm conducted.

Craig first raised this issue in his 2005 application for post-conviction relief.  The last reasoned decision on the issue was that of the Louisiana Fourth Circuit, which found the claim to be without merit without providing specific reasons.  See Ylst, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in  Strickland v. Washington, 466 U.S. 668 (1984), which the state trial court cited and applied.  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that

counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

As noted above, Craig contends that counsel should have questioned Palm to lay a foundation, including the labeling and chain of custody of the specimens tested. The transcript reflects that this foundation was in fact laid by the prosecution who called Palm to testify.

After stating his extensive qualifications as an expert in the analysis of controlled dangerous substances, Palm identified State's Exhibit 7, which was a standard evidence envelope used by the New Orleans Police Department and other agencies.[48]  He testified that the envelope was completely heat sealed when he received it.[49]  He made an incision across the top to remove the evidence.[50]  When he was finished, he placed the evidence back in the bag, re-heat-sealed the envelope, initialed the tag and added his name and the date to the chain of evidence list on the front.[51]  There was no need for Craig's counsel to repeat this line of questioning.

Craig also argues that counsel erred in failing to question Palm about the reliability of his testing methods and in having him define the technical terms he used for the jury. The questioning of witnesses falls within the ambit of trial strategy which is not to be questioned in hindsight.  In this case, Palm testified on direct examination that everything presented to him tested positive for heroin under the four testing methods used. According to the record, the defense strategy was not to question whether the substance was heroin or whether the results were accurate, but instead was to raise doubt as to

---

[48]St. Rec. Vol. 5 of 8, Trial Transcript, p. 51, 3/31/98.

[49]Id., at p. 51.

[50]Id.

[51]Id.

whether Craig was the possessor of the heroin.[52]  How the product was found to be heroin was not relevant at the time to the defense, and hindsight is not the standard by which counsel's decisions are to be judged.  Counsel was within his discretion not to pursue further questions of Palm's testing methods and instead to elicit testimony to clear his client of the possession accusation.

Craig has failed to demonstrate that counsel's actions were either deficient or prejudicial under Strickland.  The state courts' denial of relief was not contrary to or an unreasonable application of federal law.  Craig is not entitled to relief on this claim.

VII.    DEFECTIVE SEARCH WARRANT

Craig alleges that the search warrant used to enter his mother's home was invalid, which rendered the search and seizure of the evidence unconstitutional.  He argues that the evidence should not have been admissible at trial.  The availability of federal habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly limited by the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494.  A "full and

---

[52]Id., pp. 65-66 (Craig's testimony).

fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" <u>Davis v. Blackburn</u>, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  <u>Stone</u>, 428 U.S. at 494-95 n.37; <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed.  <u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980); <u>Christian v. McKaskle</u>, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of <u>Stone v. Powell</u> applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  <u>Andrews v. Collins</u>, 21 F.3d 612, 631-32 (5th Cir. 1994); <u>Christian</u>, 731 F.2d at 1199 n.1; <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

The record indicates that on January 15, 1997, the state trial court held an evidentiary hearing on Craig's motion to suppress.[53]  During the hearing, the officers testified that they obtained a search warrant before entering and searching Craig's mother's home.  The court found probable cause and denied the motion to suppress.

Craig tried to raise the issue during his testimony at trial, by stating that the search warrant was not signed by a judicial officer.[54]  The state trial court disallowed the testimony and cautioned Craig about his testimony as to legal matters.

Craig again raised the issue of the validity of the warrant on direct appeal to the Louisiana Fourth Circuit as a basis for challenging the state trial court's denial of the motion to suppress.[55]  The court held that the warrant was signed, although the signature on the copy was hard to decipher.[56]  The court also resolved that Craig failed to prove that the warrant was not signed by an authorized judge or magistrate judge.[57]  The court went on to address the legality of the search and found no error in the trial court's denial of the motion to suppress.  Craig's subsequent writ application to the Louisiana Supreme

---

[53]St. Rec. Vol. 5 of 8, Motion Hearing Transcript, 1/15/97.

[54]Id., at pp. 63, 67.

[55]State v. Craig, 825 So.2d at 604; St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, 6/12/02.

[56]St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, p. 8, 6/12/02.

[57]Id.

Court was denied without reasons.[58]  The Louisiana Supreme Court is presumed to have relied upon the same grounds as the Louisiana Fourth Circuit's reasoned opinion.  Ylst, 501 U.S. at 802.

After reviewing the record, I find that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  Andrews, 21 F.3d at 631.  The State provided Craig, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly.  The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the Stone v. Powell bar to federal review.  Janecka v. Cockrell, 301 F.3d 316, 320-21 (5th Cir. 2002).  Accordingly, Stone v. Powell bars review of this claim.  Id.; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994).  This claim for federal habeas relief must be dismissed.

VIII.   DEFECTIVE BILL OF INFORMATION

Craig alleges that the prosecution, in violation of Louisiana law, failed to amend the bill of information from the erroneous charge of distribution of heroin to possession of heroin.  He contends that the distribution of heroin charge should have been made by

---

[58]State v. Craig, 874 So.2d 173 (La. 2004); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2004-KO-0142, 5/21/04; La. S. Ct. Writ Application, 04-KO-142, 1/14/04 (postmarked 12/19/03).

indictment of a grand jury and was unlawfully charged by bill of information, contrary to Louisiana law.

As noted above, Craig did not raise the issue of prosecutorial error in the state courts.  The question of the validity of the bill of information was sua sponte raised by the Louisiana Fourth Circuit on direct appeal.[59]  As outlined above, that ruling was superseded on remand after the Louisiana Fourth Circuit obtained a more complete record for its review.[60]  At that time, the court resolved that, although the bill of information could not be located in the record before it, it was clear from the record that Craig was tried on the proper charge of possession of heroin and the jury was charged on and considered the possession of heroin charge.  The Louisiana Supreme Court is presumed to have relied upon the same grounds as the Louisiana Fourth Circuit's reasoned opinion.  Ylst, 501 U.S. at 802.

As to petitioner's argument that the bill of information failed to comply with the requirements of Louisiana law, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  This court's analysis focuses on due process considerations, and due process requires that the court grant the

---

[59]State v. Craig, 825 So.2d at 604; St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, 6/12/02.

[60]State v. Craig, 859 So.2d at 319; St. Rec. Vol. 5 of 8, 4th Cir. Opinion, 2001-KA-2085, pp. 3-5, 11/19/03.

writ only when the errors of the state court make the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court can consider Craig's arguments only in the context of federal constitutional law.

The United States Supreme Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy.  United States v. Debrow, 346 U.S. 374 (1953).  Notice, not double jeopardy, is the issue presented here.

The state appellate court made findings that the record demonstrated that Craig was on notice of what the true charge was, possession of heroin, throughout the pretrial and trial process and that he was able to prepare and present a defense.  The record presented to this court contains numerous copies of the bill of information which show a charge of distribution of heroin.  The record, however, also contains a copy of the bill of information indicating that it was amended at some point (by hand and initialed by the person making the amendments) to charge Craig with possession of heroin.[61]

---

[61]St. Rec. Vol. 3 of 8, Bill of Information, 9/24/96.

The handwritten amendment strikes through the type-written words "wilfuly [sic] and unlawfully distribute" and substitutes the words "willfully and unlawfully possess."[62] Another handwritten notation beneath the revision states "amended" and is initialed by an assistant district attorney, indicated by the handwritten notation "ADA" following the initials.  The typed date "09/23/96" appears in the top left hand corner of  the copy in the record, while the typed date "the 26th day of June" 1996 appears in its body, but no date is specifically indicated as to when the handwritten amendment was made.

The record also contains a copy of the state trial court's docket master which indicates that the pending charge was possession of heroin under La. Rev. Stat. Ann. §40:966(C)(1).[63]  This docket master is dated October 8, 1996, which was two weeks prior to Craig's arraignment on the charge.[64]  The record contains another copy of the

---

[62]Id.

[63]St. Rec. Vol. 1 of 8, Docket Master, 10/8/96.  La. Rev. Stat. Ann. 40:966(C)(1) reads as follows:

> C.  Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner or as provided in R.S. 40: 978, while acting in the course of his professional practice, or except as otherwise authorized by this Part. Any person who violates this Subsection with respect to:
> (1) A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk), shall be imprisoned at hard labor for not less than four years nor more than ten years and may, in addition, be required to pay a fine of not more than five thousand dollars.

[64]St. Rec. Vol. 1 of 8, Minute Entry, 10/22/96.

docket master dated December 17, 1996, which also shows the charge to be possession of heroin under La. Rev. Stat. Ann. § 40:966(C)(1).

As determined by the Louisiana Fourth Circuit, the trial transcript also indicates that the jury was read a bill of information indicating possession of heroin to be the charge.[65]  As discussed previously, Craig also testified at trial in a manner indicating his denial of possession (not distribution) of heroin.

Thus, the record supports the state court's findings that Craig was on notice of the true charge against him and was able to prepare and present a defense to the charge of possession of heroin.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Craig is not entitled to relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Rannell Craig for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain

---

[65]St. Rec. Vol. 5 of 8, Transcript of Reading of Bill of Information, 3/31/98.

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____8th_____ day of December, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

35